IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAFIS ZAHIR | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PATRICK R. DONAHOE, Postmaster | : | |
| General of the U.S. Postal Service | : | No. 11-5080 |

### MEMORANDUM

Padova, J.                                                                                                    December 17, 2012

      Plaintiff Nafis Zahir, a Muslim, commenced this Title VII religious discrimination in employment action after he was terminated from his job with the United States Postal Service. Defendant Patrick R. Donahoe, the Postmaster General of the United States Postal Service (the "Postal Service") has filed a Motion for Summary Judgment and, for the following reasons, we grant that Motion.

### I. BACKGROUND

      The undisputed record evidence is as follows. In 2010, Plaintiff was working in the maintenance department at the Postal Service's Philadelphia Processing and Distribution Center. The Philadelphia Processing and Distribution Center is the Postal Service's primary mail processing facility in Philadelphia ("the facility" or "the plant"). (Def. Stmt. of Mat. Facts ¶ 2.) The Postal Service runs three shifts at the facility, 24 hours a day, and employs over 2000 people there. (Id.) Tommy Franklin, the Lead Senior Manager, is responsible for overseeing the daily operations of the plant and reports directly to the plant manager. (Id.)

      Sometime in 2010, Franklin learned that Cassandra Baker, an automation clerk on the overnight shift ("Tour 1"), had not been punching out at the end of her shifts at her assigned time clock in the automation area. (Id. ¶¶ 1, 4.) In some instances, she had not punched out at any time clock at the facility. (Id. ¶ 1.) In an ensuing investigation, Franklin obtained information

regarding Baker's time clock rings from the Postal Service security system. (Id. ¶ 4.) The Postal Service determined that Baker had left the Philadelphia Processing and Distribution Center on several occasions without returning to the facility, and that someone else had punched out using her time card at the end of her shift. (Id.) On several occasions, Baker's time card had been punched out in the maintenance area of the facility, rather than in the automation area. (Id.) Because of these unauthorized absences, the Postal Service removed Baker from her position with the Postal Service. (Id. ¶ 5.)

Prior to Baker's official removal, at her pre-disciplinary interview on September 17, 2010, the Postal Service asked Baker to turn in her ID badge, and Baker replied that she did not have it with her. (Id. ¶¶ 5- 6.) When asked how she had gotten into the secure facility earlier that day, Baker responded that someone else had let her into the building, but she declined to identify the person who had done so. (Id. ¶ 6.) Because letting another person into the facility was contrary to Postal Service policy, Franklin obtained a videotape of the entrance to determine who, if anyone, had let Baker into the building. (Id. ¶ 7.) Franklin determined by reviewing the videotape that Plaintiff, who at the time was a Maintenance Operations Support Clerk, and who worked on Tour 1 with Baker, had used his ID badge to let Baker into the facility. (Id. ¶ 8.)

Franklin subsequently obtained records of Plaintiff's clock rings for a three month period. (Id. ¶ 10.) Those records revealed that Plaintiff had been out of the facility on a number of occasions while he was still on the clock. (Id.) The records further revealed that Plaintiff frequently left the building at the same time as Baker and, when Baker did not return to work, someone had punched her time card at the end of her shift in the maintenance area where Plaintiff worked. (Id.)

Franklin met with Edward Bissell, the Manager of Maintenance Operations on Tour 1, and discussed the information he had obtained about Plaintiff. (Id. ¶ 12.) On October 20, 2010, Bissell conducted a Pre-Disciplinary Interview with Plaintiff, with Franklin and others present. (Id.; Franklin Dec. ¶ 15.) Bissell asked Plaintiff whether his ID badge had "ever been used in order to permit access/egress . . . to and from this facility by any person other than [himself]" and Plaintiff denied that it had. (Def. Stmt. of Mat. Facts ¶ 13; Ex. A to Franklin Decl.) Bissell then showed Plaintiff a videotape from September 17, 2010, in which Plaintiff allowed Baker to enter the facility using his ID badge. (Def. Stmt. of Mat. Facts ¶ 14.) Plaintiff then admitted that he had let Baker into the building, explaining that that her badge had not been working that day. (Id.) Plaintiff also admitted he had let other people into the building on other occasions. (Id.) Following the Pre-Disciplinary Interview, Bissell placed Plaintiff on administrative leave. (Id. ¶ 15.)

On October 29, 2010, Bissell issued a Notice of Proposed Removal, which included three charges against Plaintiff. (Id. ¶ 16.) The Notice charged Plaintiff with (1) sixteen instances of unauthorized absences from the Philadelphia Processing and Distribution Center while Plaintiff was still on the clock, with each absence lasting between 34 minutes and 69 minutes; (2) improper use of Plaintiff's ID badge to allow Baker access to the facility on September 17, 2010, and (3) lack of candor during the investigation due to Plaintiff's initial denial that his badge had been used to let others into or out of the facility. (Id.; Ex. B to Franklin Decl. at 1-2.)

In an oral response to the charges, Plaintiff told Franklin that employees on Tour 1 routinely clocked out at one time but took lunch at another, and Plaintiff claimed that management knew of this practice. (Def. Stmt. of Mat. Facts ¶ 18.) Franklin asked Lenora Woods, Plaintiff's

3

supervisor, about this assertion. (Id. ¶ 19.) Woods advised Franklin that employees were not permitted to clock out at one time and take lunch at another, and stated that she had given talks to employees about this issue. (Franklin Decl. ¶ 22.)

On December 21, 2010, Franklin sent Plaintiff a "Letter of Decision." (Ex. C to Franklin Decl.) In that letter, Franklin advised Plaintiff that he was sustaining all three charges against Plaintiff and that the first sustained charge alone (i.e., that Plaintiff had been outside the facility without authorization, while still on the clock and getting paid) was sufficient to warrant Plaintiff's removal from his job at the Postal Service. (Id. at 1.) Franklin further advised Plaintiff that he was in fact being removed, and that his removal would take effect two days after Plaintiff's receipt of the letter. (Id.)

In February 2011, Franklin obtained time clock records for the four employees with whom Plaintiff worked in the maintenance stockroom on Tour 1. (Def. Stmt. of Mat. Facts ¶ 21.) Franklin found no evidence in those records that those employees had been outside the facility for extended periods of time while still on the clock and without specific authorization from a supervisor. (Id. ¶ 22.)

Plaintiff commenced this action by filing a pro se complaint in August 2011.[1] His Complaint alleges his termination from employment was not for the alleged disciplinary infractions, but because he is a Muslim. He therefore asserts a religious discrimination claim under Title VII. The Postal Service filed its summary judgment motion on August 20, 2012.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

---

[1] Prior to commencing this action, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission. He received a Right to Sue letter on July 18, 2011.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). "Evidence that is merely colorable or not significantly probative is insufficient to create a genuine issue of material fact for trial." West v. Lincoln Benefit Life Co., 509 F.3d 160, 172 (3d Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).

## III. DISCUSSION

Plaintiff brings his discrimination claim pursuant to Title VII. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff, a Muslim, alleges that the Postal Service discriminated against him on account of his religion.

Plaintiff does not have direct evidence of discrimination. We must therefore analyze his discrimination claim pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination . . . ." Dellapenna v. Tredyffrin/Easttown Sch. Dist., 449 F. App'x 209, 213 (3d Cir. 2011) (citing McDonnell Douglas, 411 U.S. at 802). In order to demonstrate a prima facie case of discrimination, Plaintiff must establish that:

> (1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citations omitted).

If Plaintiff succeeds in establishing a prima facie case of discrimination, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision." Dellapena, 449 F. App'x at 213 (citing McDonnell Douglas, 411 U.S. at 802). If the employer is able to meet this "'relatively light burden,'" "the burden of production returns to the plaintiff, who can defeat summary judgment only by showing by a preponderance of the evidence that the employer's stated reason is pretextual." Id. (quoting and citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). Consequently, if the Postal Service is able to state a legitimate and nondiscriminatory reason for the termination of Plaintiff's employment, Plaintiff "must produce evidence that either '(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of'" his termination. Id. (quoting Fuentes, 32 F.3d at 762). "Because the ultimate issue is whether 'discriminatory animus motivated the employer,' it is not enough to show that the employer made a 'wrong or mistaken' decision." Id. (quoting Fuentes, 32 F.3d at 765.) Rather, in order to meet his burden at this last step, Plaintiff "must uncover 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanations that would permit a reasonable factfinder to believe that the employer did not actually act for its stated reasons." Id. (quoting Fuentes, 32 F.3d at 765).

7

In its Motion for Summary Judgment, the Postal Service focuses its argument on the third step of McDonnell Douglas, arguing that it has proffered legitimate, nondiscriminatory reasons for Plaintiff's termination and that Plaintiff has not met his burden to produce evidence that either casts doubt on those reasons or allows a factfinder to infer that discrimination was the cause of the termination.[2] Plaintiff counters that each of the three reasons that the Postal Service has cited as the basis for his termination, i.e., the three sustained charges in the Notice of Termination, are illegitimate, and further argues that past treatment he has received in the workplace provides ample support for a conclusion that his religious affiliation was more likely than not the cause of his termination. For the following reasons, we find that Plaintiff has failed to support any of his arguments with record evidence on which a factfinder, applying a preponderance of the evidence standard, could base a conclusion that the Postal Service's stated reasons for his termination were pretextual.[3]

---

[2] In a footnote in its Memorandum, the Postal Service observes that it also doubts that Plaintiff can state a prima facie case of discrimination. However, it explains that it will focus on pretext because it is "Plaintiff's ultimate burden . . . to show pretext and because analysis of th[e] issues of the prima facie case and pretext overlap[] in various respects." (Postal Service Mem. at 6 n.1.)

[3] Plaintiff asserts in his Statement in Opposition to the Postal Service's Summary Judgment Motion that the "reason [he does] not have physical evidence to support [his] claims is that the Postal Service refused to give it to the Union at the time of filing a grievance, and now it conveniently has lost this information due to a system crash." (Pl.'s Stmt. in Opp. to Summ. Judg. Mot. at 1.) In the instant litigation, however, Plaintiff filed a Motion to Compel, seeking the production of certain as-yet-unproduced documents. (See Docket No. 22.) After a conference call with the parties, we granted that Motion in part and ordered the Postal Service to produce those documents to which Plaintiff was entitled under the Federal Rules. (See Sept. 17, 2012 Ord. ¶ 1) We also gave Plaintiff an extension of time to respond to the Postal Service's summary judgment motion, so that he could take the newly-obtained documents into consideration in drafting his response. (Id. ¶ 3.) Accordingly, we have resolved all discovery issues that Plaintiff raised in his properly-filed Motion to Compel, and we do not understand any additional discovery issues to be outstanding.

8

## A. The Postal Service's Reasons for Plaintiff's Termination

As noted above, the Postal Service sustained three charges against Plaintiff, which were formally identified as: (1) Unauthorized Absence from Work Assignment/Facility; Accepting Compensation for Work Not Performed; (2) Improper Use of Photo I.D. Facility Access Badge, and (3) Lack of Candor During an Official Postal Investigation. (Ex. C to Franklin Decl. at 1.) It relied on all three violations to justify Plaintiff's removal, but also advised Plaintiff that the first violation alone was sufficiently serious to warrant removal. (Id.) Plaintiff argues that none of the three charges was justified and all were pretextual for illegal discrimination.

With respect to the first charge, which was based on Plaintiff's repeated absences from the facility while still on the clock, Plaintiff argues that it was common practice for employees to clock out for lunch at one time while taking their lunch at another time, and he contends that other employees were not disciplined for this conduct, thereby establishing that this reason for his discipline was pretextual.[4] (See Pl.'s Stmt. in Opp. to Summ. Judg. Mot. at 2.) Plaintiff has, however, produced no record evidence to support the assertion that other employees engaged in this practice, much less that other similarly situated employees engaged in the practice and were not disciplined. In contrast, the record contains Franklin's declaration, in which Franklin states that he personally reviewed the time clock records of individuals similarly situated to Plaintiff, i.e., those working in the maintenance room on Tour 1, and found no evidence that those individuals, like Plaintiff, spent extended periods of time outside of the building while still on the clock,

---

[4] Plaintiff admitted at his deposition that he was absent from the facility while he was on the clock, and did not have authorization to be outside the building, on the dates and at the times the Postal Service identified in the charge. (Pl. Dep. at 95.)

9

without specific authorization from a supervisor. (Franklin Decl. ¶ 26.) Thus, the only conclusion that the record supports is that other employees did not engage in conduct like that in the first sustained charge. Under these circumstances, Plaintiff has failed to point to record evidence to support his only argument that the first charge was pretextual. Accordingly, Plaintiff has failed to meet his burden of pointing to evidence of "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in the Postal Service's explanation "that would permit a reasonable factfinder to believe that the employer did not actually act for its stated reasons." Dellapenna, 449 F. App'x at 213 (quoting Fuentes, 32 F.3d at 765).

Plaintiff also argues that the second charge – that he improperly used his facility access badge to allow Baker into the facility – was a fabricated reason for his termination because his conduct in this regard did not violate any "Postal Policy." (Pl.'s Stmt. in Opp. to Summ. Judg. Mot. at 2.) However, the Postal Service's Letter of Decision references and quotes "Administrative Support Manual Section 273.444 *Access Control System*," which provides: "When entry is controlled by a card access system, employees must always use their card access device to gain entry. Employees must not allow tailgating or piggybacking into the controlled area." (Ex. C to Franklin Decl. at 3.) In addition, Franklin states in his declaration that letting another person into the facility violates postal policy and specifically notes that "Plaintiff's ID badge explicitly stated that it was not to be used by anyone other than the person to whom it was assigned." (Franklin Decl. ¶¶ 7, 24.) Thus, the record provides no support for Plaintiff's assertion that his use of his badge to provide access to Baker did not violate Postal Service policy, but instead supports the conclusion that he did violate the established policy. Plaintiff has therefore failed to meet his burden to produce evidence that casts doubt on the Postal Service's

reliance on the second charge as a reason for Plaintiff's termination.  Dellapenna, 449 F. App'x at 213.

Lastly, Plaintiff asserts that the third charge – that he exhibited a "lack of candor" during his pre-disciplinary interview – was fabricated because he answered all of Franklin's questions truthfully.  The lack of candor charge arose from Plaintiff's "no" answer to the following question:

> To your knowledge, has your photo identification/access badge ever been used in order to permit access/egress (entry or exit) to and from this facility by any person other than yourself?

(Ex. A to Franklin Decl.)   Plaintiff explains that he understood this question to be asking whether anyone other than he had ever used his photo identification or access badge to permit a person to enter or exit the facility.  (See Pl. Dep. at 155-160; Pl.'s Stmt. in Opp. to Summ. Judg. Mot. at 3.) Maintaining that no one else has ever used his badge to let a third party into or out of the facility, Plaintiff takes the position that his "no" answer to this question was truthful.  The Postal Service counters that Plaintiff's interpretation of the question "makes little sense and defies any reasonable understanding of the inquiry."  (Postal Service Mem. at 12.)  According to the Postal Service, "[t]he only reasonable interpretation of the question is whether Plaintiff (or anyone else) used his ID badge to permit someone [to] enter or exit the facility."  (Id.)   However, the Postal Service's use of the passive tense in the question, as well as the overall structure of the question, leave significant room for misinterpretation, including that which Plaintiff claims he gave it.  We therefore find that there is a genuine issue of fact as to whether Plaintiff actually engaged in a lack of candor.

Nevertheless, we do not find this factual dispute to be material to the pretext inquiry,

because no factfinder could reasonably conclude, based on the totality of the record evidence, that the lack of candor charge was a "fabrication." Dellapenna, 449 F. App'x at 213 (quoting Fuentes, 32 F.3d at 762). As the Third Circuit has explained, even where a defendant is "wrong or mistaken in believing [that the plaintiff engaged in] misconduct, this does not make [its] reason pretextual." Martin v. Health Care & Retirement Corp., 67 F. App'x 109, 112 (3d Cir. 2003) (citing Fuentes, 32 F.3d at 765). "[T]he factual dispute [that must be resolved] is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Thus, to support a claim of pretext, the plaintiff must show that the defendant did not actually believe the plaintiff to have engaged in the conduct that was charged and cited as the basis for the plaintiff's discipline. See Martin, 67 F. App'x at 113 (citing Fuentes, 32 F.3d at 766-67).

Here, Franklin states in his declaration that he understood the question at the pre-disciplinary interview to ask whether Plaintiff's badge had been used by anyone, including Plaintiff, to let someone else into the facility, not to ask "whether someone else had used [Plaintiff's] badge to enter or let another person in[to] the building, as . . . Plaintiff now claims" (Franklin Decl. ¶¶ 16-17.) Because Plaintiff later admitted to having used his badge to let Baker into the facility, and yet had answered the question at issue "no," Franklin considered Plaintiff's answer to be untruthful. (Id.) Although Plaintiff credibly argues that he understood the question differently than Franklin did, he points to no evidence to rebut Franklin's also plausible interpretation of the question or to cast doubt on Franklin's personal understanding of the question. Thus, it simply cannot be said that Plaintiff has pointed to evidence to show that Franklin did not actually believe Plaintiff to have engaged in the conduct that was charged. See Martin, 67 F.

12

App'x at 113 (citing Fuentes, 32 F.3d at 766-67). Likewise, Plaintiff has "uncover[ed] 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanations that would permit a reasonable factfinder to believe that the employer did not actually act for its stated reasons." Dellapenna, 449 F. App'x at 213 (quoting Fuentes, 32 F.3d at 765); see also Ullrich v. United States Sec'y of Veterans Affairs, 457 F. App'x 132, 139 (3d Cir. 2012) (rejecting plaintiff's argument that, because he spoke truthfully, discipline for lack of candor employer was pretextual, where plaintiff uncovered no discrepancies in employer's proffered reason).

Moreover, even if Plaintiff had introduced evidence to discredit Franklin's reliance on Plaintiff's lack of candor as a ground for termination, he has presented no evidence from which a reasonable jury could conclude that the remaining two grounds for his termination, which he has failed to discredit, were insufficient in their own right to justify his termination. (Ex. C to Franklin Decl. at 1 ("I find that the first charge, standing alone, is sufficient to warrant your removal from the Postal Service.")). In other words, Plaintiff has failed to satisfy his burden under the third prong of McDonnell Douglas to cast "sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Dellapenna, 449 F. App'x at 213 (quoting Fuentes, 32 F.3d at 762) (emphases added).

### B. Discrimination as Motivating Factor

Plaintiff can alternatively satisfy his burden under the third prong of McDonnell Douglas by proffering evidence that "'allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of' the termination." Dellapenna, 449 F. App'x at 213

(quoting Fuentes, 32 F.3d at 762). Plaintiff attempts to meet this burden by pointing to his own testimony about alleged religious discrimination that he experienced in the workplace in the 1990s.

According to Plaintiff, in the early-1990s, he and other Muslim employees at the Postal Service would gather to pray every morning in a training room at work, but were then told that they could no longer pray in that location. (Pl. Dep. at 48-50, 209-10.) When the employees asked for an explanation, they were told that other employees had been complaining, that management had ordered that they no longer pray in the training room and that, if they had a problem with the restriction, they should take it up with Franklin. (Id. at 49.) Plaintiff and the others began using the union steward's office for their prayers, but management again interfered, telling them that they could not pray there either. (Id. at 52-53.)

After this occurred, Plaintiff spoke with two lower level managers, who told him that they did not have a problem with him and the others using the union steward's office, but that the problem lay with "upper management" – and, in particular, Franklin. (Id. at 58.) When Plaintiff attempted to speak with Franklin, Franklin "brushed [Plaintiff] off" and told him to talk to the Tour 1 manager of maintenance, Kenneth Carmack. (Id. at 59-60.) Carmack reiterated that the order was coming from Franklin, said that he would talk to Franklin and advised that, in the meantime, Plaintiff and the others should pray in the penthouse. (Id. at 61.) The employees used the penthouse for a few months, until one day when they found that "management" had locked the access doors and stairwell. (Id. at 62.) For the next couple of weeks, the Muslim employees moved from place to place, praying wherever they could find space. (Id. at 63.)

Plaintiff, in the meantime, placed a call and wrote a letter to Senator Arlen Spector. (Id.)

Plaintiff received a call back from one of Senator Spector's associates, who asked for the names of Plaintiff's managers. (Id. at 64-65.) Plaintiff gave the associate the names of Franklin and a few others. (Id.) Some weeks later, the associate called Plaintiff and said that Plaintiff should not have any more problems but that, if he did, he should contact the associate again. (Id. at 65.) After that, Plaintiff and the others were left alone, and Franklin did not speak to Plaintiff for the next fifteen years. (Id. at 65, 68.) In addition, Plaintiff had no other incidents at the Postal Service involving religion after that time. (Id. at 68-69.)

Plaintiff now maintains that his testimony in this regard, which purportedly establishes that Franklin made it difficult for him to pray at work in the 1990s, is evidence that would permit a reasonable factfinder to infer that Franklin was motivated by religious discrimination when he disciplined Plaintiff for alleged workplace infractions over fifteen years later. The Court of Appeals for the Third Circuit has held that "sufficiently strong evidence of an employer's past treatment of a plaintiff may prove pretext." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 539 (3d Cir. 1992). However, it has also cautioned that "[t]here is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue that the former cannot, as a matter of law, be relevant to intent." Ansell v. Green Acres Contracting Co., 347 F.3d 515, 524 (3d Cir. 2003).

Applying this law, we hold that Plaintiff's testimony suggesting that Franklin exercised his authority in the early 1990s to control the location in which Plaintiff and other Muslims prayed during work hours is not probative of Franklin's intent in sustaining disciplinary charges against Plaintiff more than fifteen years later. To the contrary, the events in the early-1990s are simply too remote in time from the events in 2010 to have any relevance to the pretext inquiry. See, e.g.,

15

Carver v. D.C.I. Chippewa Clinic, Civ. A. No. 05-122, 2006 WL 2927628, at *10 (W.D. Pa. Oct. 12, 2006) (stating that an incident four years before termination was too remote in time to demonstrate discriminatory intent or be relevant to pretext). This is particularly so in view of the utter lack of evidence of – or even a suggestion of – any continuing discrimination against Plaintiff in the intervening fifteen-year period. Put simply, no reasonable jury could possibly conclude that the reasons given for Plaintiff's termination were pretextual based solely on record evidence that Plaintiff and other Muslim Postal Service employees had a difficult time finding a management-approved prayer location over fifteen years ago. We therefore conclude that Plaintiff has failed to point to evidence from which a reasonable factfinder could find, by a preponderance of the evidence, that discrimination was the motivating cause of his termination.

**IV. CONCLUSION**

For the foregoing reasons, we conclude that Plaintiff has failed to meet his burden on summary judgment to produce evidence to rebut the Postal Service's legitimate and non-discriminatory reasons for his termination. Indeed, there is simply nothing in the record that could support an inference that Plaintiff was fired on account of his religion. We therefore grant the Postal Service's Motion for Summary Judgment and enter judgment in favor of the Postal Service and against Plaintiff. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.